UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **KAYLA D. LOYD** | **CASE NO. 3:22-CV-05809** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CITY OF RUSTON, LOUISIANA ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM RULING

Pending before the court is a Motion for Summary Judgment [Doc. No. 8] filed by Defendants City of Ruston ("City"), Stephen J. Rogers ("Chief Rogers"), and Henry R. Wood ("DC Wood") (collectively, "Defendants"). Plaintiff Kayla Loyd ("Loyd") filed an opposition [Doc. No. 14], and Defendants filed a reply to Loyd's opposition [Doc. No. 17].

For the foregoing reasons, Defendants motion [Doc. No. 8] is **GRANTED IN PART and DENIED IN PART.**

### I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants Chief Rogers and DC Wood are both male officers at the Ruston Police Department ("RPD").[1]

Plaintiff Kayla Loyd, a female police officer, was first hired by Chief Rogers as a police communications officer for the RPD in 2011.[2] On September 24, 2013, Chief Rogers hired Loyd as a sworn police officer.[3] In April of 2020, Loyd applied for Sergeant, passed the civil service

---

[1] [Doc. No. 8-1, p. 338-40]
[2] [Doc. No. 8-3, p. 380]
[3] [Id. at p. 382]

1

examination, and was promoted to a probationary Sergeant on April 22, 2020.[4] Following her passing of the one year probationary period, Loyd became permanent Sergeant on April 22, 2021.[5]

Aside from the civil service positions of RPD, there are other divisions and special assignments.[6] While the other divisions include Road Patrol; Criminal Investigation Division ("CID"); Administration; Communications; and Records, the special assignments include CID; K-9 Unit; and RPD SWAT Team.[7]

Chief Rogers has the sole discretion in transferring and assigning police officers to other divisions and special assignments at any time for any legitimate matter.[8] On October 2, 2017, Loyd expressed her interest in obtaining a CID position.[9] Since that expression was unsuccessful, Loyd completed further training and schooling, and reapplied for a CID position on December 14, 2020.[10] Once again, however, Loyd's application was denied and upon obtaining a bachelor's degree and more experience, she reapplied on January 11, 2023.[11] Nevertheless, this application was also denied.[12]

Loyd contends that despite her lengthier employment at RPD, her greater experience, and multiple applications to the CID, males were transferred to the objectively better position over her.[13]

---

[4] [Doc. No. 8-1, p. 343]
[5] [Id.]
[6] [Doc. No. 8-3, p. 381]
[7] [Id.]
[8] [Id.]
[9] [Doc. No. 14-1, p. 863]
[10] [Id. at p. 865]
[11] [Id. at p. 868]
[12] [Doc. No. 14, p. 837]
[13] [Id. at p. 842-45]

The Defendants, however, contend that males and females are treated equally at RPD and since there are no pay increases or greater benefits, a transfer from any position to CID is merely lateral and does not present an objectively better position.[14]

In 2014, DC Wood recommended and assigned Loyd to the RPD SWAT Team, which is a position she currently holds.[15] Loyd contends that she was not provided with rifles, even after they were made available, and that she was not given the same equipment as her male counterparts.[16] Loyd further contends that DC Wood did not provide her with evidence markers because she is female.[17] Loyd also contends that although DC Wood allowed males to gain instructor certifications, he excluded her from instructing and training until after meeting with Mayor Walker.[18]

The Defendants contend that Loyd qualified for and received her new rifle on August 20, 2020.[19] Defendants assert that although certain styles are not always available, both Loyd and male officers were provided with functional equipment.[20] Defendants contend that since Lieutenant Morace, a male officer, was also not given evidence markers on the day at issue, Loyd was not deprived of evidence markers based on her gender.[21] Defendants further contend that instructors are ordered based on operational schedules rather than any protected characteristic.[22]

---

[14] [Doc. No. 17, p. 1385-86]
[15] [Doc. No. 8-5, p. 392]
[16] [Doc. No. 14, p. 846]
[17] [Id. at p. 847]
[18] [Id. at p. 849-50]
[19] [Doc. No. 8-1, p. 359-60]
[20] [Id. at 360]
[21] [Id.]
[22] [Doc. No. 8-5, p. 394]

Loyd filed two separate grievances, one on July 1, 202, and one on November 4, 2021, regarding DC Wood producing a hostile work environment.[23] Loyd asserts that she suffered unwanted harassment based on her gender that undermined her effectiveness as a supervisor.[24] Loyd contends that even though DC Wood made it difficult for her to work under him by continuously belittling, demeaning, and harassing her, male supervisors have not been treated in such a manner.[25]

Defendants contend that regardless of gender, DC Wood gives constructive criticism to all officers.[26]

Lastly, Loyd contends that the discriminatory actions against her following the Defendants' knowledge of her grievances prove retaliation.[27] Loyd asserts that Defendants had knowledge by making a connection between Mayor Walker's numerous appearances at RPD meetings and Loyd being asked if she wished to attend Defensive Tactics training.[28]

Defendants contend that because they did not become aware of her July 1, 2021, grievance until September 27, 2021, Loyd's August 18, 2021, Charge of Discrimination and Retaliation is insufficient.[29]

On May 19, 2021, Loyd filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[30] Subsequently, Loyd was issued a Notice of Right to Sue Letter, which she received on August 4, 2022.[31]

---

[23] [Doc. No. 14-1, p. 875-81]
[24] [Doc. No. 14, p. 851]
[25] [Id. at p. 854]
[26] [Doc. No. 8-1, p. 368]
[27] [Doc. No. 14, p. 855]
[28] [Id.]
[29] [Doc. No. 8-1, p. 371]
[30] [Doc. No. 1, p. 5]
[31] [Id.]

On October 26, 2022, Loyd filed a complaint against defendants, alleging claims of employment discrimination based on gender.[32]

On February 9, 2023, Defendants filed a motion for summary judgment on Loyd's failure to promote, disparate treatment, hostile work environment, and retaliation claims.[33] Loyd filed an opposition on March 6, 2023.[34] Defendants filed a reply to the opposition on March 10, 2023.[35]

## II. LAW AND ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) states:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted); *see also* FED. R. CIV. P. 56(c)(1).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

---

[32] [Doc. No. 1]
[33] [Doc. No. 8-1]
[34] [Doc. No. 14]
[35] [Doc. No. 17]

5

106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (*citing Anderson*, 477 U.S. at 248). However, in evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

Note that "a district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial." *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991); *see also Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978) ("If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved . . . . The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.").

### B. Analysis

#### 1. Loyd is prohibited by Title VII from holding Rogers and Wood liable in their individual or official capacities.

Under Title VII, individual employees are not subject to personal, individual liability. *Muthukumar v. Kiel*, 478 F. App'x 156, 158 (5th Cir. 2012). Additionally, individuals are not liable

for Title VII claims in their official capacities. *Ackel v. Nat'l Commc'ns, Inc.*, 399 F.3d 376, 382 (5th Cir. 2003).

Loyd argues that in addition to the City of Ruston, the individual Defendants are also liable.

Defendants argue that Chief Rogers and DC Wood cannot be held liable individually, or in their official capacities.

The Court finds that Chief Rogers and DC Wood are not liable in their individual or official capacities for the discrimination claims made by Loyd.

### 2. Claims made prior to July 23, 2020, are prescribed.

42 U.S.C. § 2000e-5(e)(1) requires an EEOC Charge of Discrimination ("Charge") to be filed within 300 days of the alleged unlawful employment action. Every discrete adverse employment action is separately actionable and begins a new clock for filing charges alleging the act. *Smith v. AT&T Mobility Services, L.L.C.*, No. 21-20366, 2022 WL 1551838, *2 (5th Cir. 5/17/22).

Loyd argues that prescription runs from the time a position opening is not filled and restarts each time a male was hand selected over her. As a result, Loyd contends that her October 2, 2017, and December 14, 2020 letters are not the beginning of prescription periods.

Defendants argue that Loyd's August 18, 2021 charge has prescribed as it relates to the October 2, 2017 letter of interest because it was not within the 300 day prescriptive period.

The Court finds that as opposed to Defendants claim that Loyd filed the charge on August 18, 2021, Doc. No. 1, p. 5 indicates that the charge was filed on May 19, 2021. Hence, to survive the prescriptive period, the unlawful employment action must have taken place on or after July 23, 2020. Since the October 2, 2017 letter was outside of the prescriptive period, it is prescribed.

However, since the December 14, 2020 letter was inside of the prescriptive period, it has not prescribed.

### 3. Gender Discrimination Claims

Loyd brings a gender discrimination claim under Title VII of the Civil Rights Act of 1964. Employment discrimination based on gender is prohibited by Title VII. 42 U.S.C. § 2000e-2. A plaintiff must provide direct or circumstantial evidence sufficient to prove that sex was a motivating factor in an employment action *Dailey v. Shreveport*, No. 10-1453, 2012 WL 3928428, *4 (W.D. La. 9/6/12). Direct evidence demonstrates a fact without inference or presumption. *Id.* Upon an absence of direct evidence, a plaintiff is required to prove a *prima facie* case of discrimination by proving that she (1) is a member of a protected class; (2) was qualified for the position at issue; (3) suffered an adverse employment action; and (4) was replaced by a male. *Id.* at *6.

Provided that the plaintiff demonstrates a *prima facie* case of discrimination, the burden shifts to the employer to set forth a legitimate, nondiscriminatory reason for its actions. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). If the employer satisfies its burden, the burden shifts back to the plaintiff to prove that either (1) the employer's reason was a pretext for discrimination; or (2) the plaintiff's characteristic was another "motivating factor" for the employer's action. *Id.*

#### a. Prima facie case of discrimination

Loyd argues that Chief Rogers' failure to hand select any female for CID in his fifteen-year tenure together with his refusal to explain her rejection from the position serves as direct evidence of gender discrimination. Further, Loyd contends that even if her direct evidence is insufficient, she can prove a *prima facie* case of discrimination.

Defendants do not deny that Loyd is a member of a protected class since she is female, or that she is and continues to be qualified for a CID position. However, Defendants contend that since Loyd did not suffer an adverse employment action, she cannot establish a *prima facie* case of discrimination.

> **i. Since Loyd has proven genuine issues of material fact regarding whether there was an adverse employment action against her, she satisfies the initial burden of proof.**

Adverse employment actions include discharges, demotions, refusals to hire, refusals to promote, and reprimands. *Id.* at 612. A transfer denial may be parallel to a promotion denial even if the sought-after position did not involve an increase in compensation or other tangible benefits. *Id.* at 613. If the new position was objectively better, then the refusal to promote could constitute an adverse employment action. *Id.* at 614. To determine whether the new position is objectively better, the following factors are applicable: whether the position includes a pay increase or other tangible benefits; provides greater responsibility or better job duties; includes career-advancing possibilities; requires greater skill, education, or experience; is acquired through a complex competitive process; or is objectively more prestigious. *Id.* Lastly, since the examination is objective, "the employee's subjective impressions as to the desirability of the new position nor the employee's idiosyncratic reasons for preferring the new position" are insufficient in determining whether the position would constitute a promotion. *Id.*

Defendants argue that moving Loyd from Sergeant to CID is a lateral transfer rather than a failure to promote because there is no "promotion and selection" process and CID is not objectively better than Sergeant. Loyd responds that there is a genuine issue of material fact regarding whether she suffered an adverse employment action since the following proves CID to be an objectively better position than Sergeant: those in CID are not required to wear a thirty pound

9

ballistic vest and duty belt; have opportunities to eat lunch with the Chief and Deputy Chief; have more flexible working hours; receive a yearly clothing allowance of $500.00; get paid holidays off; receive company cell phones paid for by the department; can use after-hours phone calls for overtime; are hand selected by the highest-ranking person in the department; work more independently; have better positions at Louisiana Tech Football games; do not have to work in the least desired position–traffic; and work closely with the District Attorney's and sometimes work with FBI Agents and U.S. Marshals.

The Court finds that since the better positions at Louisiana Tech Football games; exemption from working in traffic; and freedom from wearing a ballistic vest and duty belt all comprise Loyd's subjective impression and desirability to have a position in CID, they are insufficient to establish whether CID is a promotion from Sergeant. However, the Court finds that the remaining statements bring up genuine issues of material fact as to whether CID was an objectively better position by which Defendants failed to promote Loyd. Specifically, receiving a $500.00 clothing allowance and paid company cell phones are tangible benefits to the position; working independently furnishes greater responsibility; eating with the Deputy and Chief Deputy along with working alongside the District Attorney, FBI Agents, and U.S. Marshals provide career-advancing possibilities; being hand-selected for the position arguably makes for a more prestigious position since Sergeant status is obtained by passing a written test and seniority; and having more flexible working hours, getting paid holidays off, and using after-hours phone calls as overtime are also factors making the CID position objectively better. Therefore, Loyd has established genuine issues of material fact as to whether Loyd suffered an adverse employment action.

### b. Defendants fail to satisfy their burden of proving a non-discriminatory reason for the alleged failure to promote Loyd.

Since Loyd met her burden in proving a *prima facie* case of discrimination, the burden shifts to the Defendants to prove a legitimate, nondiscriminatory reason for their actions. *Id.* at 611.

In addition to Loyd meeting her initial burden of proof, she has indicated that numerous male officers have been promoted before her.

Defendants responded by stating that it is untrue that neither Loyd nor other RPD employees are treated differently based on gender. However, Defendants also state that "Loyd is and continues to be eligible for transfer to the CID, even though, to date, she has not been so transferred."

The Court finds that Defendants have not met their burden of proving a legitimate, nondiscriminatory reason for not transferring Loyd to CID.

### c. Loyd's claims are insufficient in proving disparate treatment because in each instance, she was not treated less favorably on grounds of gender.

To establish a *prima facie* case of discrimination based on disparate treatment, the employee must show that she (1) is a member of a protected class; (2) is qualified for the position at issue; (3) had an adverse employment action against her; and (4) was treated less favorably because of her membership in that protected class than were others similarly situated, under nearly identical circumstances. *Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015). Adverse employment actions concerning disparate treatment are those that affect the terms and conditions of employment. *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014). Specifically, the disparate treatment must involve hiring, firing, demoting, granting leave, or compensating to amount to an adverse employment action. *Id.*

As stated above, it is undisputed that Loyd is a member of a protected class and is qualified for a CID position. Further, there are genuine issues of material fact as to whether Loyd suffered an adverse employment action. However, Defendants contend that Loyd cannot establish a *prima facie* case of disparate treatment because she was not treated less favorably than others who were in identical circumstances due to her gender.

In *Thompson*, the plaintiff was an African American detective who was suspended, along with two other white detectives, for falsifying time sheets. *Id.* at 502. However, the Department levied written restrictions against the plaintiff, but not against the two white detectives. *Id.* The plaintiff's restrictions stated that he could not conduct an evidence search without being supervised; log evidence; work undercover; swear to an affidavit of a criminal case; act as an evidence officer of a crime scene; or be a lead investigator. *Id.* Although the lower court held that the plaintiff failed to establish an adverse employment action by only claiming deprivation of some job responsibilities, the appellate court reversed. *Id.* Furthermore, the appellate court reasoned that not only was the plaintiff able to prove a change in his title, pay, and benefits, he was stripped of his integral and material responsibilities as a detective. *Id.* at 504.

Although Loyd claims to be the subject of disparate treatment, the dissimilarities from her claims to those in *Thompson* prove that there was no such adverse employment action. First, unlike the plaintiff in *Thompson* being treated differently from white detectives, Loyd received the same treatment as other male officers. Specifically, Loyd's claim that she was not given the same equipment as her male counterparts fails as a disparate adverse employment action since evidence proves that she received the same basic equipment as male SWAT members–a new rifle and an optic system. Additionally, Loyd's assertion that her gender caused her deprivation of evidence markers is insufficient because Lt. Stephen Morace, a male police officer, did not receive evidence

markers either. Since Loyd's equipment and evidence marker arguments neither amount to a demotion similar to that in *Thompson* nor involve a hiring, firing, granting leave, or compensation, they do not qualify as an adverse employment action regarding disparate treatment.

In *Brooks*, African American plaintiffs filed a Title VII claim against their former employer Firestone Polymers, L.L.C. ("Firestone"). *Brooks v. Firestone Polymers, L.L.C.*, 640 F.App'x 393, 395 (5th Cir. 2016). Included in their numerous discrimination arguments is the plaintiff's claim that Firestone's denial of training was equivalent to an adverse employment action. *Id.* at 397. Specifically, the plaintiffs argue that Firestone's denial of training "affected their compensation by decreasing their opportunity to earn overtime." *Id.* The lower court dismissed the denial of training argument and nevertheless, the appellate court affirmed due to evidence only showing a potential, tangential effect on a higher amount of compensation. *Id.* at 395, 397. Lastly, the court reasoned that there was a lack of evidence proving that the denial of training affected their employment status or benefits. *Id.* at 397.

The similarities between Loyd's claim that she was subjected to disparate treatment as a result of being excluded from instructing and training to those in *Brooks* demonstrate that Loyd's claim should be dismissed. Analogously to the plaintiffs in *Brooks*, Loyd argues that since she was excluded from training, she was denied overtime and compensation. However, Loyd's argument is based on the exclusion of supplemental training rather than any form of training affecting her employment status or benefits. Hence, similarly to the ruling in *Brooks*, there is only a potential, tangential effect regarding an increase in compensation.

The Court finds that Loyd has failed to satisfy this element because she has not shown that she was treated less favorably than other similarly situated employees outside of her class, under nearly identical circumstances.

### d. Due to the lack of frequency and severity, Loyd's harassment claims do not affect her work to the extent of a hostile work environment.

To prove a hostile work environment claim based on gender, the Plaintiff must prove (1) she is a member of a protected group; (2) she suffered unwelcome harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment "affected a term, condition, or privilege of employment," and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action. *West v. City of Houston*, 960 F.3d 736, 741 (5th Cir. 2020). Furthermore, the test in determining a hostile work environment is the totality of the circumstances, which requires the following to be weighed: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with the employee's work performance. *Friend v. McAdamas*, 861 F. App'x. 825, 830-31 (5th Cir. 2021).

As stated above, it is undisputed that Loyd is a member of a protected class. Further, Loyd argues that she meets the other elements of a hostile work environment claim since Wood yelled at, belittled, and berated her in front of other subordinates but did not treat males accordingly. Additionally, Loyd asserts that Wood's continuous harassment affected conditions of her employment since it undermined her ability to effectively supervise. Lastly, Loyd contends that her in-person meetings with the Mayor together with her two official grievances show that RPD should have known about the harassment and failed to take remedial action.

Defendants argue that under the totality of the circumstances, Loyd did not suffer a hostile work environment. First, defendants contend that since Loyd only alleged two instances of unwelcome harassment–that Wood berated her on April 23, 2020, and that Wood yelled at, belittled, and berated her in front of others on May 26, 2022–the discriminatory conduct was not frequent. Second, Defendants assert that despite Loyd's belief that Wood is difficult to work under,

14

yelling at employees is not severe enough to meet a hostile work environment claim. Lastly, Defendants argue that Wood gives constructive feedback to all officers, including males.

The Court finds that under the totality of the circumstances, Loyd's alleged hostile work environment was not frequent, severe, or humiliating enough to interfere with her work performance as a supervisor.

### e. Since Defendants did not have knowledge of Loyd's charge until after the alleged adverse action, the retaliation claim fails.

To establish a *prima facie* case of retaliation, the plaintiff must prove (1) participation in activities protected by Title VII; (2) an adverse action against her by the employer; and (3) a causal connection between the protected activity and the materially adverse action. *Smart v. Green*, 350 F. App'x. 845, 846 (5th Cir. 2008). The protected activities of Title VII include making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII. *Id.*

If the plaintiff is unable to demonstrate all three elements, then summary judgment is sufficient. *Stewart v. Miss. Transp. Comm'n.*, 586 F.3d 321, 331 (5th Cir. 2009). However, if the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to set forth a legitimate, nondiscriminatory reason for its actions. *Alvarado*, 492 F.3d at 611.

First, it is undisputed that Loyd participated in a protected Title VII activity by filing a charge on May 19, 2021. Second, however, there is a dispute as to whether Loyd suffered an adverse employment action. Third, Loyd argues that since Defendants failed to promote her even after the charge was filed, there is a causal connection between the protected activity and the adverse action.

Defendants argue, however, that they had no knowledge of Loyd's charge until September 27, 2021.

The Court finds that since Loyd filed her charge on May 19, 2021, and Defendants were unaware of the charge until September 27, 2021, there is no causal connection between the protected Title VII activity and the alleged failure to promote.

### III. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [Doc. No. 8] filed by Defendants is **GRANTED** with regards to the disparate treatment, hostile work environment, and retaliation claims and is **DENIED** with regards to the failure to promote claim. Loyd's disparate treatment, hostile work environment, and retaliation claims are hereby **DISMISSED WITH PREJUDICE**.

**Monroe, Louisiana,** this 26 day of July, 2023.

	_____
	**TERRY A. DOUGHTY**
	**UNITED STATES DISTRICT JUDGE**